1  Elizabeth A. Falcone, CA Bar No. 219084
   elizabeth.falcone@ogletreedeakins.com
2  Amanda C. Van Wieren, *admitted pro hac vice*
   amanda.vanwieren@ogletreedeakins.com
3  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
4  222 SW Columbia Street, Suite 1500
   Portland, OR 97201
5  Telephone: 503.552.2140
   Facsimile: 503.224.4518
6
7  Attorneys for Defendant
   PARSONS CORPORATION

8  [*Additional Counsel Listed on Next Page*]

9               **UNITED STATES DISTRICT COURT**

10              **CENTRAL DISTRICT OF CALIFORNIA**

11

12 LUAY ALJAMAL,                          Case No. 2:16-cv-02518-JFW (FFMx)

13         Plaintiff,                      **MEMORANDUM OF POINTS AND
                                           AUTHORITIES IN SUPPORT OF
14    v.                                   DEFENDANT'S RENEWED
                                           MOTION FOR SUMMARY
15 PARSONS CORPORATION,                    JUDGMENT**

16         Defendant.                      [Filed concurrently with Notice of Motion
                                           and Renewed Motion for Summary
17                                         Judgment; Separate Statement of
                                           Uncontroverted Facts; Supporting
18                                         Declarations of Elizabeth A. Falcone,
                                           Krista Woodley, Ashay Dalvi, and Zahir
19                                         Qayum; and [Proposed] Judgment]

20                                         Hearing Date:     August 7, 2017
                                           Hearing Time:     1:30 p.m.
21                                         Place:            Courtroom 7A

22                                         Complaint Filed: April 12, 2016
                                           Trial Date:       October 17, 2017
23                                         District Judge:   Hon. John F. Walter
                                           Magistrate Judge: Frederick M. Mumm
24

25

26

27

28

2017 06 10
Parsons-Aliamal -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT

Michael J. Sexton, CA Bar No. 153435
michael.sexton@ogletreedeakins.com
Ogletree, Deakins, Nash, Smoak & Stewart, P.C.
695 Town Center Drive, Suite 1500
Costa Mesa, CA  92626
Telephone:  714.800.7900
Facsimile:   714.754.1298

Attorneys for Defendant
PARSONS CORPORATION

2017 06 10
Parsons-Aliamal -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

I.    INTRODUCTION ..................................................................... 1

II.    ASSERTIONS OF MATERIAL FACT ................................... 2

    A.    The Parties ..................................................................... 2

    B.    October 2013:  Plaintiff Loses a Job Offer at North-Star After Failing to Secure a Saudi Work Visa. ................... 3

    C.    May 2015:  Systra Refuses to Discuss Employment Opportunities with Plaintiff Due to "Previous Dealings." ............ 4

    D.    Plaintiff's Job Search Efforts Have Not Been Fruitful. ................. 5

III.    LEGAL ARGUMENT ............................................................ 8

    A.    Plaintiff Fails to Raise a Triable Issue of Intentional Interference with Prospective Economic Advantage. ................... 8

        1.    Any Claims Based on the Loss of Jobs Prior to April 12, 2014, Including the North-Star Job, Are Time-Barred. ........................................................... 9

        2.    Plaintiff Has No Admissible Evidence of Any Intentional Act Designed to Interfere with His Employment Opportunities. ................................... 9

        3.    Plaintiff Alleges No Independently Unlawful Conduct. ............................................................... 13

        4.    Plaintiff's Expectation of Future Employment Is Not an "Economic Relationship"; His Claim Fails Absent Evidence of Specific Job Offers That Were Rescinded. ........................................................... 15

        5.    Plaintiff Cannot Raise a Triable Issue that Parsons Knew He Was Seeking Employment with any Particular Entity. ............................................... 16

        6.    Plaintiff Lacks Sufficient Evidence of Causation. ............. 17

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

B.    Even if Plaintiff Could Prove Intentional Interference with
Prospective Economic Advantage, He Cannot Raise a
Triable Issue that Parsons Bears Liability for the
"Communications" He Alleges Were Made. ..............................20

1.    Plaintiff Lacks Competent Evidence to Show a
"Unity of Interest and Ownership" Between
Parsons and SAPL. ...............................................22

2.    There Is No Evidence That an "Inequitable Result
Will Follow" if Plaintiff's Can Recover Only from
SAPL. ..................................................................24

IV.    CONCLUSION ..........................................................................25

2017 06 10
Parsons-Aliamal -

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*A-Mark Co. v. General Mills, Inc.*
148 Cal. App. 3d 312 (1983) ......................................................................... 14

*Am. Diversified Props. v. Valencia*,
No. B260155, 2016 Cal. App. ............................................................. 22, 23, 24

*Anderson v. Liberty Lobby, Inc.*
477 U.S. 242 (1986) ..................................................................................... 12

*Associated Vendors, Inc. v. Oakland Meat Co*
210 Cal. App. 2d 825 (1962) ......................................................................... 22

*Cafasso v. Gen'l Dynamics C4 Systems, Inc.*
637 F.3d 1047 (9th Cir. 2011) ....................................................................... 10

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) ....................................................................................... 8

*Comput. Scis. Corp. v. Comput. Assocs. Int'l, Inc.*,
Nos. CV 98-1374-WMB, 1999 U.S. Dist. LEXIS 21803 (C.D. Cal.
Aug. 12, 1999) .............................................................................................. 18

*Della Penna v. Toyota Motor Sales, U.S.A., Inc.*
11 Cal. 4th 376 (1995) .................................................................................. 13

*Donoho v. Cty. of Sonoma*,
No. 15-cv-01392-WHO, 2015 U.S. Dist. LEXIS 81567 (N.D. Cal.
June 22, 2015) ......................................................................................... 15, 16

*Forsythe v. Saudi Arabian Airlines Corp.*
885 F.2d 285 (5th Cir. 1989) ......................................................................... 25

*Korea Supply Co. v. Lockheed Martin Corp.*.,
29 Cal. 4th 1134 (2003) ........................................................................ *passim*

2017 06 10
Parsons-Aliamal -

v                          Case No. 2:16-cv-02518-JFW (FFMx)

*Las Palmas Associates v. Las Palmas Center Associates*,
    235 Cal. App. 3d 1220 (1991) ............................................................... 21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ............................................................................ 2

*Mesler v. Bragg Management Co.*,
    39 Cal. 3d 290 (1985) ..................................................................... 21, 22

*Mid-Century Ins. Co. v. Gardner*,
    9 Cal. App. 4th 1205 (1992) ................................................................ 22

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*
    210 F.3d 1099 (9th Cir. 2000) ............................................................... 8

*Pardi v. Kaiser Found'n Hosp.*,
    389 F.3d 840 (9th Cir. 2004) ............................................................... 15

*Perfect 10, Inc. v. Visa Intern Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) ................................................................. 9

*Rogan v. City of Boston*,
    267 F.3d 24 (1st Cir. 2001) ................................................................. 12

*Sonora Diamond Corp. v. Superior Court*,
    83 Cal. App. 4th 523 (2000) ................................................................ 24

*Spradlin v. Lear Siegler Mgmt. Servs. Co.*,
    926 F.2d 865 (9th Cir. 1991) ............................................................... 25

*Triton Energy Corp. v. Square D Co.*
    68 F.3d 1216 (9th Cir. 1995) ............................................................... 12

*Wilson v. Loew's Inc.*
    142 Cal. App. 2d 183 (1956) ............................................................... 18

*Youst v. Longo*,
    43 Cal. 3d 64 (1987) ................................................................. 13, 15, 18

**Statutes**

California Code of Civil Procedure Section 335.1 ........................................ 9

2017 06 10
Parsons-Aliamal -

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

**Other Authorities**

2

Cal. Civ. Proc. Code § 335.1 ...................................................................... 7

Fed. R. Civ. P. 56.......................................................................................2,4, 8

Fed. R. Evid. 801(c) & 802.......................................................................... 10

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2017 06 10
Parsons-Aliamal -

DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

## I.    **INTRODUCTION**

Plaintiff Luay Aljamal is hard up for a job.  Despite sending out application materials with typos and grammatical errors, and volunteering to various prospective employers via email that he "had to leave Parsons <u>and it was not the best separation</u>," he blames his lack of career success on Parsons.  He assumes—without evidence— that he has been "cut off" from job opportunities because Parsons has blacklisted him, and filed this suit casting his fruitless job search as the result of "intentional interference with prospective economic advantage."  That is the sole cause of action in this case, and it fails as a matter of law and undisputed fact.

First, certain of Plaintiff's allegations are time-barred and may be adjudicated in Parsons' favor on that basis alone.  Second, Plaintiff cannot raise a triable issue as to the *prima facie* elements of his claim, in particular the requirement that he have an *existing* economic relationship with a third party that he alleges was derailed, not the mere hope of one day finding a job.  Third, Plaintiff has to show *intentional* interference by Parsons; there is no admissible evidence to raise a triable issue that Parsons knew about any job offer (or prospect, for that matter) Plaintiff had with a potential employer, much less that it intentionally interfered with his job opportunities.  But even if Parsons engaged in communications with its business contacts that somehow decreased the chances that Plaintiff would get a job (which it denies), that *is not illegal*, absent some unlawful conduct by Parsons (such as defamation, which is not, and could not be, pleaded here).  Likewise, the allegations that Parsons refused to transfer a visa it had obtained for him to work in Saudi Arabia to another company is not a wrongful act.  Plaintiff may not like it, but the law does not require Parsons to help him get a new job.  Finally, Plaintiff's entire case is predicated on the theory that Parsons is the alter ego of the company for which he, and most of the alleged interferers, worked: Saudi Arabia Parsons Limited.

1

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

It is not, and Plaintiff cannot raise a triable issue of alter ego liability. Summary judgment should be granted in full.

## II. ASSERTIONS OF MATERIAL FACT[1]

### A. The Parties

Plaintiff Luay Aljamal worked for Saudi Arabia Parsons Limited ("SAPL"), where he was a Rail Program Director in the Kingdom of Saudi Arabia. *See* Defendant's Separate Statement of Uncontroverted Facts in Support of Renewed Motion for Summary Judgment, Uncontroverted Fact No. (hereinafter, "UF") 1. Plaintiff is an American (not a Saudi) citizen, and for Plaintiff to work lawfully in Saudi Arabia, SAPL was required to sponsor his work visa. UF 2 & 3. Plaintiff's employment with SAPL ended in July 2013, for reasons that the parties do not agree on, but that are not relevant to this case or Motion. UF 4. It is clear, however, that Plaintiff's experience with four former coworkers, Takis Salpeas, George Krupa, Carter Rohan, and Doug Quade, left a bad taste in his mouth. *See* UF 5-9, 11-15.

Defendant Parsons Corporation ("Parsons") is an engineering, construction, technical, and management services firm; it is a Delaware corporation with headquarters in Pasadena, California. UF 16 & 17. Parsons does not have a direct ownership in SAPL. UF 18. Rather, Parsons owns a company called Parsons Middle East Corporation ("PMEC") which holds a 50% ownership stake in SAPL. UF 19 & 20.

---

[1] Parsons bases this Motion on the allegations in Plaintiff's Complaint (without admitting the truth of those allegations), Plaintiff's deposition testimony, and other facts that Plaintiff has not and/or cannot dispute. Parsons cites Plaintiff's allegations and other facts he asserts because the Court may consider those fact as undisputed, *only* for purposes of this motion, under Rule 56(e). *See also* <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 561 (1992) (facts alleged by non-moving party taken as true "for purposes of" summary judgment). No factual assertions recited in this brief, nor in the concurrently-filed Separate Statement of Uncontroverted Material Facts are stipulated to or admitted by Parsons.

## B.    October 2013:  Plaintiff Loses a Job Offer at North-Star After Failing to Secure a Saudi Work Visa.

Plaintiff alleges that he secured employment with a company called North-Star in October 2013, and asked "Defendant" to transfer his work visa to North-Star.  UF 21 & 22.  Plaintiff testified at his deposition that, in late 2013, an employee of North-Star, Abdul Hassan, called SAPL's engineering department and inquired about Plaintiff's visa transfer request.  UF 23.  Based on that call, Hassan allegedly told Plaintiff that "Parsons" refused to transfer his visa.  UF 24.  Hassan further related that whomever he spoke to at SAPL told him that Plaintiff had been fired off of his last project by SAPL's client, and that Plaintiff was not a competent project manager.  UF 25.  Plaintiff contends both of those statements are untrue.  UF 26.

Plaintiff assumes that Hassan's discussion must have been with either Krupa, who reported to Plaintiff during his time with SAPL, or Rohan, whom Plaintiff believes replaced him as Rail Program Director, because they regularly worked out of the SAPL office in Riyadh.  UF 5, 7 & 28.  However, Plaintiff also testified that there were "people [he] did not know, [he] did not work with," who occasionally worked out of the SAPL office.  UF 29.  For his part, Hassan allegedly told Plaintiff that he was "not sure who it was" that he talked to.  UF 27.

Plaintiff later met an employee of SAPL, Stephen R. Tuzik, for coffee in Riyadh; according to Plaintiff, Tuzik advised him, "Parsons doesn't want you here in Saudi Arabia or in [the] Middle East.  They want you back in the States and they're only going to give you an exit visa."  UF 30 & 31.

Although Plaintiff's resume and LinkedIn profile produced in discovery reflect that he has been employed by North-Star as its President, CEO, and Founder since October 2013, Plaintiff testified at deposition that Hassan revoked the North-Star job offer, citing that Plaintiff did not have authorization to work in Saudi Arabia, and that North-Star was "worried that [he was] not going to be able to secure

3

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

any jobs based on the information we got." UF 32 & 33. However, Plaintiff also testified that Hassan told him that North-Star would "hold" his position while he secured a Saudi work visa. UF 34. Plaintiff concedes he could have obtained a new Saudi work visa, but did not do so merely because "it's a long process." UF 35.

**C.** **May 2015:  Systra Refuses to Discuss Employment Opportunities with Plaintiff Due to "Previous Dealings."**

In May 2015, a third-party recruiter, Tim Naylor (an employee of Oreion Recruitment), approached Plaintiff about working for Systra, an Australian rail company. UF 36. Plaintiff had worked directly with Systra employees during his employment with SAPL. He testified as follows:

> Q. So is it true that you were working with Systra on a presentation for the Madinah Metro project?
>
> A. That's correct.
>
> Q. So is it fair to say that you did have some dealings with Systra during your employment with SAPL?
>
> A. Of course. They are teams.
>
> …
>
> Q. And you stated that you also worked on the Riyadh Metro project; correct?
>
> A. That's correct.
>
> Q. And that was a project that was a joint venture between SAPL and Systra; is that correct?
>
> A. Yes.
>
> Q. And so it's fair to say that you worked directly with Systra on [sic] a couple of contexts during your employment with SAPL; is that correct?
>
> A. Correct.

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

UF 37.

On May 6, 2015, Plaintiff received an email from Naylor stating that Systra was not interested in discussing employment opportunities with him:

> I heard back from Systra & unfortunately it has come
> back that they aren't willing to proceed with yourself due
> to previous dealings.
> I did say you are keen to be able to discuss these to let
> them appreciate your situation however there was no
> appetite for this & there [*sic*] internal system has a
> previous note not to enter in dialogue with yourself.
> My concern is that Egis are also JV'd with Parsons on a
> few projects & no feedback has come back from there
> either…

UF 38.  Plaintiff also spoke with Naylor about the Systra job, and testified that Naylor related that this information had come from "Wadii," "the highest guy up there at Systra," and that Systra was "not going to enter into dialogue with [Plaintiff]."  UF 39.  Based solely on Naylor's statements, Plaintiff then concluded that Parsons communicated with Systra to prevent him from obtaining employment there.  UF 40 ("Q. So other than what is in Exhibit 1 and [] your verbal communication with Mr. Naylor …, do you have any other facts to show that that note in Systra's internal system was caused by Parsons or SAPL in any way?  A. I don't know.").  He never received an offer of employment from Systra.  UF 41.

**D.    Plaintiff's Job Search Efforts Have Not Been Fruitful.**

Plaintiff's post-SAPL job search included inquiring about work with companies including ASTAD, AECOM, CH2MHill, Randstad, and HNTB.  UF 42. Based on documents Plaintiff himself produced, he communicated directly with representatives of these companies.  UF 43.  In his communications with several of

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

them, Plaintiff himself brought up the subject of his acrimonious separation from SAPL; for example, he wrote to a contact at AECOM as follows: "[D]ue to my departure from Parsons due to my unfortunate divorce back in the USA, I had to leave Parsons <u>and it was not the best separation</u>." UF 44 (emphasis in original). Plaintiff sent a similar communication to CH2MHill and to Randstad. UF 44. Plaintiff admitted he does not know whether this self-disclosure about Parsons had any impact on his job prospects. UF 47.[2]

With respect to AECOM, an AECOM recruiter pointed out to him in February 2014, that there were "spelling and grammar mistakes" in his CV; later, in September 2016, when a different AECOM employee told him a telephonic interview had to be rescheduled, Plaintiff replied with an email suggesting the postponement was suspicious. UF 48-50. Yet another potential employer, HNTB, also commented on Plaintiff's resume, telling him, "The text of the resume is still problematic and does not seem right." UF 51. Nevertheless, as of Plaintiff's April 6, 2017 deposition, his resume still contained several grammatical and typographical errors. UF 52. Plaintiff admittedly does not know whether the errors in his resume had had any impact on his job search. UF 53.

In December 2015, Plaintiff acknowledged to a representative of ASTAD that he had omitted his employment with SAPL on both his resume and LinkedIn profile, but contended that including that employment would be "detrimental" to his employment prospects, particularly in light of the fact that he was suing Parsons in "the US courts (federal) … to stop damaging [his] professional relationship." UF 54 & 55. Plaintiff even went so far as to attach his civil suit Complaint to that email.

---

[2] Plaintiff also admits that he was *not* involved in divorce proceedings at the time of his separation from SAPL, and he is not sure "what state of mind [he] was in" that would have prompted him to offer this false explanation to potential employers. UF 45 & 46.

Case No. 2:16-cv-02518-JFW (FFMx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

UF 56. Plaintiff conceded at deposition that some employers take the omission of a job on a resume to be dishonest, but testified that he did not know if ASTAD decided not to hire him because he had omitted SAPL from his resume. UF 57 & 58. Plaintiff also did not know whether his unprompted disclosure that he was suing his former employer had any impact on ASTAD's decision not to hire him. UF 59.

Though Plaintiff inquired about jobs at various companies, he could think of only two jobs for which he definitively submitted application materials since July 2013: LA Metro and Bechtel. UF 60. LA Metro responded to Plaintiff, rejecting his application on the grounds that there were "other candidates whose qualifications more precisely fit [their] current needs." UF 61. Plaintiff testified that he had no reason to dispute the truthfulness of that explanation. UF 62. Similarly, a representative of Bechtel responded to Plaintiff that he was not the right candidate because "[a]fter careful consideration and further discussions with the hiring manager," he determined that Plaintiff's "background [wa]s slightly off from what [Bechtel was] looking for." UF 63. Plaintiff believes this explanation may have been untrue because the same Bechtel representative previously expressed interest in Plaintiff, before Plaintiff submitted a revised resume. UF 64. No one from Bechtel ever offered any further explanation for their hiring decision. UF 65.

Plaintiff has received no offers of employment since July 2013, except for those from Auriga (a company he worked for during a brief period in 2014) and North-Star. UF 21 & 64. Aside from North-Star, though, Plaintiff admits that no other prospective employer ever told him that conduct by a Parsons or SAPL employee was the reason that he did not receive an offer of employment. UF 67.

Despite the foregoing history regarding Plaintiff's job search, Plaintiff blames Parsons for his inability to get a job. *See generally* Dkt. 1. He asserts broadly that "Defendant" "communicated with other companies in the rail and civil engineering industry and utilized its position in the industry to improperly influence other

2017 06 10
Parsons-Aliamal -

7

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

companies to refrain from hiring Plaintiff."  *Id.* at ¶ 17.  He alleges that when Parsons "communicated with other companies," it interfered with his prospective economic relationships, and that he would have secured employment had Parsons not engaged in such interference.  *Id.* at ¶¶ 17, 19 & 22-23.  According to Plaintiff, this resulted in "economic harm in the form of an inability to obtain further employment in the rail industry or any other civil engineering related industry."  *Id.* at ¶ 24; *see also* UF 66.

Although not specifically delineated as a claim in the body of the Complaint, the Complaint in general (and the caption) identifies just one claim:  intentional interference with prospective economic advantage.  *See generally* Dkt. 1.

## III.   **LEGAL ARGUMENT**

Summary judgment is warranted when there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)(2).  The moving party bears the initial responsibility to identify the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Parsons can meet that burden by: (1) negating an essential element of a claim, or (2) showing that Plaintiff does not have sufficient evidence of an element to carry the burden of persuasion at trial.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).  In response, Plaintiff must identify specific facts showing a genuine issue for trial.  Fed. R. Civ. P. 56(e)(2).

## A.   **Plaintiff Fails to Raise a Triable Issue of Intentional Interference with Prospective Economic Advantage.**

The elements of intentional interference with prospective economic advantage are: (1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic

2017 06 10
Parsons-Aliamal -

8

harm to the plaintiff proximately caused by the acts of the defendant.  *See Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (2003) (*citing Buckaloo v. Johnson,* 14 Cal. 3d 815, 826 (1975)).

### 1.    **Any Claims Based on the Loss of Jobs Prior to April 12, 2014, Including the North-Star Job, Are Time-Barred.**

The tort of intentional interference of prospective economic advantage is subject to the two-year statute of limitations set out in California Code of Civil Procedure Section 335.1.  CAL. CIV. PROC. CODE § 335.1; *Perfect 10, Inc. v. Visa Intern Serv. Ass'n*, 494 F.3d 788, 810 (9th Cir. 2007).  Here, Plaintiff alleges that Parsons interfered with his job opportunity with North-Star **in late 2013,** when some unknown person communicated to Hassan that Parsons was refusing to transfer his visa and that he had been fired by SAPL's client because he was not a competent project manager.  UF 23-25 & 28.  Any claim based on that conduct must have been filed no later than 2015 to be timely.  However, this lawsuit was not filed until April 12, 2016.  *See* Dkt. 1.  Plaintiff's allegations regarding the North-Star job are time-barred and should be dismissed for this reason alone.

To the extent Plaintiff argues that any other job prospect was interfered with prior to April 12, 2014 (for example, any job he was considered for at AECOM in February 2014), that argument fails based on the two-year statute of limitations.

### 2.    **Plaintiff Has No Admissible Evidence of Any Intentional Act Designed to Interfere with His Employment Opportunities.**

Plaintiff also cannot sustain his claim because he has no admissible evidence of *any conduct* that anyone at Parsons or SAPL engaged in to interfere with his job prospects.  Plaintiff believes that the following four persons took action to prevent him from securing employment: Rohan, Krupa, Salpeas, and Quade.  UF 71.  However, he testified that he is not aware of *any* act that either Salpeas or Quade took to prevent him from obtaining employment.  UF 72 & 73.  As for the other two

2017 06 10
Parsons-Aliamal -

men (Krupa and Rohan), Plaintiff's claimed evidence is woefully inadequate.

The only "evidence" of interference by Rohan or Krupa that Plaintiff has is his contention that either Rohan or Krupa told Hassan he had been fired off a project by SAPL's client and that he was not a competent project manager (or "PM"). UF 23, 25, 28 & 78. First, Plaintiff cannot meet his burden on summary judgment because Hassan's out-of-court statement to Plaintiff of what he was told about Plaintiff's departure from SAPL is inadmissible hearsay. *See* Fed. R. Evid. 801(c) & 802. The information Hassan gave Plaintiff should be excluded in its entirety for that reason. Second, Plaintiff testified that Hassan told him he *did not know* who he (Hassan) had spoken with at SAPL. UF 27. As such, there is no foundation for the assertion that this information came from Rohan, Krupa, or anyone authorized to speak on behalf of SAPL or Parsons. Plaintiff's assumption that it was Rohan or Krupa is complete speculation, which does not create a triable issue. *Cafasso v. Gen'l Dynamics C4 Systems, Inc.*, 637 F.3d 1047, 1061 (9th Cir. 2011).

Plaintiff's circumstantial evidence of interference fares even worse. Plaintiff contends that the following facts show Krupa or Rohan interfered with his prospective employment:

- Krupa emailed Plaintiff stating that Parsons never considered Plaintiff to be a project manager, UF 9;
- Greg McNulty, an employee of Parsons, told Plaintiff that Rohan had "insulted" Plaintiff, stating "this guy … is useless," UF 74 & 75;
- Naylor's May 6, 2015 email, stating that Systra's internal system contained a note that it should not enter into a "dialogue" with Plaintiff, UF 38;
- Tuzik's statement that Parsons wanted Plaintiff out of Saudi Arabia, UF 30;
- The fact that engineering firms approached Plaintiff about jobs but later stopped communicating with him, UF 77; and
- Krupa acted "hostile" towards Plaintiff when they worked together, UF 14.

10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

UF 78.  None of this raises a triable issue that Parsons interfered with Plaintiff's job search.  Plaintiff's case boils down to speculation that because these things happened and he has not found a job, intentional interference also must have happened.  This is not a reasonable inference and is not supported by competent evidence.

First, Krupa's email claiming that Parsons did not consider Plaintiff to be a project manager shows nothing about any alleged interference with Plaintiff's employment opportunities.  The email was sent only to Plaintiff and other Parsons' employees, *not to any prospective employer*.  UF 10.  Furthermore, Plaintiff admits that Krupa's statement was *true*.  Plaintiff testified that *Krupa's* title was "project manager," and that he (Plaintiff) was the Saudi Arabian Rail Director, which is "different from a project manager."  UF 1, 5 & 79.

As for McNulty's report that Rohan called Plaintiff "useless," Plaintiff admits that McNulty works for Parsons, and Plaintiff has never sought a job with McNulty *at any time*.  UF 75 & 76.  Accordingly, there are no facts to support the assumption that a negative statement Rohan may have made about Plaintiff *to McNulty* had any impact on Plaintiff's job prospects with other employers.

Plaintiff's claim about the note in Systra's internal system also falls flat. Plaintiff concedes that no one—including Naylor—ever told him that *Parsons* was responsible for the note in Systra's system.  UF 80 ("Q. So other than what is in Exhibit 1 and [] your verbal communication with Mr. Naylor …, do you have any other facts to show that that note in Systra's internal system was caused by Parsons or SAPL in any way?  A. I don't know.").  He has simply assumed that Parsons is to blame, based on Naylor's stated "concern" that two different prospective employers did not respond favorably to Plaintiff's employment inquiries and happened to have joint venture relationships with Parsons.  UF 81.  Naylor's statement is not only inadmissible hearsay, but falls far short of raising a triable issue of interference.  The Court must draw "justifiable inferences" in the non-moving party's favor on

2017 06 10
Parsons-Aliamal -

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

summary judgment, not credit "conclusory allegations, empty rhetoric, unsupported speculation, or evidence which, in the aggregate, is less than *significantly probative*." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Rogan v. City of Boston*, 267 F.3d 24, 27 (1st Cir. 2001) (emphasis added); *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (non-moving party's burden is to "come forward with sufficiently 'specific' *facts* from which to draw *reasonable* inferences about other material facts that are necessary elements of the opposing party's claim" (emphasis added)).  Plaintiff's attempts to "connect the dots" are not supported by the record.  His assumptions are not "justifiable inferences" supported by "significantly probative" facts.

When all of Plaintiff's conjecture is set aside, he is left with no evidence to raise a triable issue that any employee of SAPL or Parsons interfered with his job opportunities.  Tellingly, he testified as follows:

> Q.  BY MS. VAN WIEREN: Did you ever hear anyone
> at Parsons or SAPL make any negative comments about
> you to a potential employer?
>
> A.  *No.*
>
> Q.  Did you ever learn from any other source that anyone
> at Parsons or SAPL made any negative comments about
> you to a potential employer?
>
> MR. ORLAND:  Well, other than what he's testified to?
>
> Q.  BY MS. VAN WIEREN:  Yes.
>
> A.  No.
>
> Q.  So other than what Mr. Hassan told you about the call
> to the Saudi Arabia office, did you ever learn from any
> other source that anyone at Parsons or SAPL made any
> negative comments about you to a potential employer?

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

1    A. *No.*

2    …

3    Q. *Do you have any other facts that you think shows*

4    *that somebody at Parsons or SAPL made negative*

5    *comments about you to a potential employer?*

6    A. *Not that I'm aware of.*

7    UF 70, 82-84 (emphasis added).  Plaintiff's claim fails at square one.

8    ### 3.    Plaintiff Alleges No Independently Unlawful Conduct.

9    To survive summary judgment, Plaintiff must not only identify some

10   intentional act that interfered with his prospective economic relationships, but also

11   show that such act was independently unlawful:  "[A] plaintiff seeking to recover for

12   alleged interference with prospective economic relations has the burden of pleading

13   and proving that the defendant's interference was wrongful 'by some measure

14   beyond the fact of the interference itself.'"  *Della Penna v. Toyota Motor Sales,*

15   *U.S.A., Inc.*, 11 Cal. 4th 376, 447 (1995) (quoting *Top Service Body Shop, Inc. v.*

16   *Allstate Ins. Co.*, 582 P.2d 1365, 1371 (Or. 1978)); *Youst v. Longo,* 43 Cal. 3d 64, 71

17   fn. 6 (1987).  The California Supreme Court further explained in *Korea Supply*, 29

18   Cal. 4th at 1154, that an intentional interference claim requires a showing "that the

19   defendant engaged in an act that is wrongful apart from the interference itself."

20   "[A]n act is independently wrongful if it is *unlawful*, that is, if it is proscribed by

21   some constitutional, statutory, regulatory, common law, or other determinable legal

22   standard."  *Id.* at 1159 (emphasis added).

23   It is axiomatic that to allege an unlawful act, Plaintiff had to identify a viable

24   act of interference, which he has not done.  He speculates, without evidence, that

25   Parsons used its position in the rail engineering industry to influence its "connections

26   or joint venturers" not to hire him.  Dkt. 1, ¶ 17.  As discussed *supra* Section III.A.2,

27   there is simply no admissible evidence that supports that claim, but even if Parsons

28

2017 06 10
Parsons-Aliamal -

13

*did* take action to influence its business contacts not to hire Plaintiff, that would not be illegal.  As the California Supreme Court held in *Korea Supply*, "[t]he tort of intentional interference with prospective economic advantage is not intended to punish individuals or commercial entities for their choice of commercial relationships or their pursuit of commercial objectives, unless their interference amounts to independently actionable conduct."  131 Cal. Rptr. at 1159.  Here, absent some illegal conduct by Parsons, it was entitled to tell its business "connections" or "joint venturers" that it would not do business with Plaintiff and/or that they should not do business with him.  The California Appellate Court for the Second District has confirmed the following tort principle applies to cases of intentional interference with economic advantage:

> [I]n the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may …. enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability.

*A-Mark Co. v. General Mills, Inc.*, 148 Cal. App. 3d 312, 324 (1983) (quoting THE LAW OF TORTS 954-955 (4th ed. 1971)) (dismissing claim for intentional interference with prospective economic advantage).  That is exactly what Plaintiff alleges here.  It is not, as a matter of law, grounds to sue Parsons.

Even Plaintiff's time-barred allegation about SAPL's refusal to transfer his work visa (UF 24 & 30) fails under this test.  Parsons' has offered expert witness testimony that there is no Saudi Arabian law requiring SAPL to agree to the visa transfer.  Declaration of Zahir Qayum in Support of Defendant's Renewed Motion for Summary Judgment (hereinafter, "Qayum Decl."), ¶ 9.  Rather, under Saudi law,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

"[a]s the Plaintiff's [visa] sponsor in the KSA, SAPL had the exclusive and lawful right to decide … whether he would transfer to another employer in the KSA." *Id.* at ¶ 8. Plaintiff cannot identify any legal requirement to the contrary. While it might have made Plaintiff's life easier if Parsons had agreed, Plaintiff cannot show that the act of not agreeing was independently *unlawful*.

### 4.    Plaintiff's Expectation of Future Employment Is Not an "Economic Relationship"; His Claim Fails Absent Evidence of Specific Job Offers That Were Rescinded.

Plaintiff also fails to raise a triable issue that he had an existing economic relationship with a third party which had a probability of future economic benefit. *See, e.g., Korea Supply*, 29 Cal. 4th at 1153. "This tort … 'protects the expectation that the relationship eventually will yield the desired benefit, not necessarily the more speculative expectation that a potentially beneficial relationship will arise.'" *Id.* at 1164 (quoting *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 524 (1996)). To qualify as a protectable interest, "it must be reasonably *probable* the prospective economic advantage would have been realized but for defendant's interference." *Youst*, 43 Cal. 3d at 71 (emphasis in original). The Ninth Circuit has specifically applied this standard to a job applicant, rejecting an intentional interference claim that involved "merely a 'speculative' expectation that a potentially beneficial relationship will arise." *Pardi v. Kaiser Found'n Hosp.*, 389 F.3d 840, 852 (9th Cir. 2004) (applying California law).

Indeed, the Northern District of California has rejected an intentional interference claim by a job seeker that was supported by far more promising indications of future employment than those Plaintiff alleges. In *Donoho v. County of Sonoma,* the plaintiff applied for a promotion, passed all qualifying examinations, was recommended as a finalist by four panels of three interviewers, and was one of two final candidates for the position; she did not get the job due to a third party's

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

negative statements about her.  No. 15-cv-01392-WHO, 2015 U.S. Dist. LEXIS 81567, at **4, 21 (N.D. Cal. June 22, 2015).  The district court found the plaintiff failed to allege a probability of future economic benefit, because an "expectation of receiving a promotion [wa]s too hypothetical to support a claim."  *Id.* at *21.

Plaintiff has even *less* evidence to suggest the probability of future economic benefit than in *Donoho*.  He admits he has received *zero* offers of employment from any source, except Auriga (with which he claims no interference), since his separation from SAPL in July 2013.  UF 41, 66.  Indeed, Plaintiff could identify only *two employers* to whom he actually submitted applications since July 2013.  UF 60. Even the two jobs Plaintiff applied for, let alone those jobs for which he did not apply, do not give rise to a sufficient "economic relationship" which is "probable" to result in future economic benefit, because Plaintiff got no job offers.  UF 66. Parsons could not have interfered with job offers Plaintiff never received.

### 5.    Plaintiff Cannot Raise a Triable Issue that Parsons Knew He Was Seeking Employment with any Particular Entity.

As noted, one element on which Plaintiff must raise a triable issue is that Parsons knew about his economic relationship with a third party.  *See Korea Supply*, 29 Cal. 4th at 1153.  Plaintiff speculates the alleged bad actors were aware he was seeking employment with North-Star because SAPL's refusal to transfer his work visa to North-Star "would not happen without [their] acknowledgement."  Plaintiff cannot offer competent evidence to support that assertion, however.  UF 88 & 89.

As to the Systra job, Plaintiff also has no admissible evidence of sufficient probative value.  He testified as follows:

Q.  Other than Exhibit 1, the e-mail from Tim Naylor, do you have any other facts to show that Mr. Salpeas was aware you were seeking employment with Systra?

A.  Most what happens is *most likely what he did*, him

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

and Carter [Rohan], communicated with these guys and
told him, "Don't hire him. He's no good." You know,
just basically they lied about my abilities.

Q. But you did not witness Mr. Salpeas communicating
anything to Systra about your performance?

A. No, I didn't.

**Q. Or did you ever witness Mr. Salpeas …**
**communicating anything to Systra at all?**

…

THE WITNESS: **No.**

UF 90-92 (emphasis added). Plaintiff testified similarly about Rohan's knowledge.
He believes Rohan was aware he was seeking employment with Systra because
Rohan communicated with Systra regarding the scope of his work on the Riyadh
Project, a joint project between SAPL and Systra; however, Plaintiff never saw any
such communications, and therefore has no idea whether they were about him. UF
93-95. Plaintiff has no evidence that Krupa was aware he was seeking employment
with Systra, and cites Naylor's May 5, 2015 email as purported "evidence" that
Quade knew he was seeking employment with Systra. UF 96 & 97. The Naylor
email shows no such thing. *See* UF 38. Plaintiff cannot ask the Court to infer facts
that the evidence does not show. Absent some evidence that Salpeas, Rohan, or
Quade actually communicated with Systra *about Plaintiff*, this case is built on
nothing but Plaintiff's speculation that his former coworkers had knowledge of his
prospective employment relationships.

### 6.   **Plaintiff Lacks Sufficient Evidence of Causation.**

Finally, Plaintiff's claim fails because he does not have probative evidence
that Parsons caused him damage. To prevail, Plaintiff must offer "threshold … proof
that it is that it is reasonably *probable* that the lost economic advantage would have

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

been realized **but for** the defendant's interference." *Youst*, 43 Cal. 3d at 71 (italics in original; bolding added). "While California case law is somewhat unclear, the courts appear to read *Youst*'s reasonable probability standard to require a reasonable certainty of a future economic benefit. That is, the courts require a plaintiff to demonstrate with reasonable certainty that, absent defendant's interference, a formal business relationship would have been consummated." *Comput. Scis. Corp. v. Comput. Assocs. Int'l, Inc.*, Nos. CV 98-1374-WMB (SHx), CV 98-1440-WMB (SHx), 1999 U.S. Dist. LEXIS 21803, at **71-72 (C.D. Cal. Aug. 12, 1999) (citing *PMC, Inc. v. Saban Entertainment, Inc.*, 45 Cal. App. 4th 579, 601 (1996)); *see also Wilson v. Loew's Inc.*, 142 Cal. App. 2d 183, 190 (1956) (requiring that "at the time of the alleged [interference] there was a certain or definite prospect" a contract would be executed).

As noted, Plaintiff can only recall two jobs for which he submitted application materials in the nearly four years since he left SAPL: LA Metro and Bechtel. UF 60. Both companies have offered reasons for rejecting his applications that are wholly unrelated to any influence by Parsons, and which Plaintiff cannot dispute. UF 61-63 & 65. Indeed, Plaintiff testified that he had no reason to dispute the truthfulness of LA Metro's explanation that it had "other candidates whose qualifications more precisely fit [their] current needs." UF 61 & 63. Plaintiff also concedes he has never been offered any explanation for Bechtel's decision not to hire him other than that his "background [wa]s slightly off from what [Bechtel was] looking for." UF 63 & 65. Plaintiff's conjecture that Bechtel's explanation is untrue (based on the fact that the same Bechtel representative previously reviewed Plaintiff's resume and expressed interest) fails to account for intervening events, including revisions Plaintiff made to his resume to make his work history clearer, and the involvement of the hiring manager in the assessment of Plaintiff's qualifications. UF 63 & 64. There are plenty of other reasons why a prospective employer may change his or her

18

mind about an applicant midway through the application process that have nothing at all to do with secret blackballing.  Plaintiff's suspicions are not competent evidence that he probably would have obtained the Bechtel job but for some act by Parsons.

There also is no competent evidence that "absent [Parsons'] interference, a formal business relationship would have been consummated" between Plaintiff and Systra.  Plaintiff testified that he knew he would have gotten the job at Systra but for Parsons' alleged interference because: (1) someone from Systra emailed Plaintiff to say he would be a "good fit" for the project; (2) an acquaintance of Plaintiff's, Nadeem Taher, who ultimately got the Systra job, told him Systra was "desperate" to have a project manager; (3) Plaintiff believes he was the most qualified person for the job; and (4) Rohan was communicating with Systra about the Riyadh project.  UF 93, 99-102 & 104.  Plaintiff's first allegation does not raise a triable issue that Plaintiff was reasonably certain to get the Systra job; being called a "good fit" does not prove that one is reasonably certain to be hired.  Plaintiff's second allegation— that Taher stated Systra was "desperate" to hire a project manager— is hearsay.  But even if it were not, just because a company is "desperate" to hire does not lead to a probability it will hire Plaintiff in particular.  Further, Plaintiff admits that Systra *hired Taher*.  UF 101.  Third, Plaintiff's allegation that he was the most qualified candidate is self-serving and lacks foundation; he admits that he does not even know *who the other candidates for that job were*.  UF 103.  Finally, Plaintiff's fourth piece of "evidence"—that Rohan had communicated with Systra about the Riyadh Project—has zero probative value as to the probability of Systra hiring Plaintiff.  In any case, as noted, Plaintiff had no access to Rohan's communications with Systra, and therefore has no idea what they were about.  UF 94.  In sum, Plaintiff has only his incredulity that he was not hired and his anger with Parsons.  Beyond that, he is merely speculating to fill in the gaps.  This is not sufficient to raise a triable issue.

Finally, even if SAPL's refusal to transfer Plaintiff's visa to North-Star was

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

timely and independently unlawful (it is not), it still could not serve as the factual predicate for Plaintiff's claim because Plaintiff cannot show that that refusal was the but-for cause of him losing his offer with North-Star.  As noted, Plaintiff testified that Hassan told him North-Star would "hold" his position if he could secure a new Saudi work visa.  UF 34.  Plaintiff concedes he could have independently obtained that visa without Parsons' assistance, but decided not to do so because "it's a long process."  UF 35.  In other words, ultimately it was Plaintiff's laziness, not SAPL's decision not to transfer the work visa, that lost him the North-Star job.

Plaintiff cannot establish a genuine issue of material fact as to any element of his *prima facie* case of intentional interference with prospective economic advantage. This lawsuit should be dismissed with prejudice forthwith.

**B.**      **Even if Plaintiff Could Prove Intentional Interference with Prospective Economic Advantage, He Cannot Raise a Triable Issue that Parsons Bears Liability for the "Communications" He Alleges Were Made.**

But even assuming Plaintiff could raise a triable issue of intentional interference with prospective economic advantage, his claim still fails because Parsons is not liable for any of the alleged conduct.  As noted, Plaintiff suspects the following persons prevented him from securing employment:  Salpeas, Quade, Krupa, and Rohan.  UF 71.  But Plaintiff cannot hold Parsons liable for their alleged conduct because ***none of them worked for Parsons within the limitations period***. UF 106.  Plaintiff cannot dispute this, as he admitted at deposition that he "wouldn't have access to [their employment] record[s]."  UF 107.

There also is no evidence that any of these men were otherwise working as "agents" of Parsons when they allegedly interfered with Plaintiff's job search. Plaintiff's deposition testimony completely forecloses the possibility that he could make such a claim.  He testified as follows:

Q.  Do you have any facts to show that Parsons authorized

1    Carter Rohan to take, take action to prevent you from

2    obtaining employment with any prospective employer?

3    A.  Not that I, not as far as I know, not that I'm heard him

4    saying it.

5    Q.  Okay. Do you have any facts to show that Parsons

6    authorized Takis Salpeas to take action to prevent you from

7    obtaining employment?

8    A.  I don't know.

9    Q.  Do you have any facts to show that Parsons authorized

10   Doug Quade to take action to prevent you from obtaining

11   employment?

12   A.  I don't know.

13   Q.  Do you have any facts to show that Parsons authorized

14   George Krupa to take actions to prevent you from

15   obtaining employment?

16   A.  I don't know.

17   UF 108-11.

18       Nonetheless, Plaintiff claims he can establish liability because "SAPL was a

19   mere instrumentality or alter ego of Parsons, created for the purpose of conducting

20   Parsons' business in Saudi Arabia." Dkt. 1, ¶ 9.  That is not sufficient to raise a

21   triable issue.  "[S]ociety recognizes the benefits of allowing persons and

22   organizations to limit their business risks through incorporation, sound public policy

23   dictates that imposition of alter ego liability be approached with caution"; liability

24   under an alter ego theory is imposed sparingly and only when "the ends of justice

25   require it." *Las Palmas Associates v. Las Palmas Center Associates*, 235 Cal. App.

26   3d 1220, 1249 (1991); *Mesler v. Bragg Management Co.*, 39 Cal. 3d 290, 300

27   (1985).  These policy concerns result in a presumption in Parsons' favor:  "Corporate

28

2017 06 10
Parsons-Aliamal -

21

Case No. 2:16-cv-02518-JFW (FFMx)

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

entities are presumed to have existences separate from their shareholders." *Am. Diversified Props. v. Valencia*, No. B260155, 2016 Cal. App. Unpub. LEXIS 6137, at **15-16 (Ct. App. Aug. 22, 2016) (citing *Mid-Century Ins. Co. v. Gardner*, 9 Cal. App. 4th 1205, 1212 (1992)).  Parsons need not prove its corporate separateness from SAPL; rather, *Plaintiff* bears the burden of overcoming a presumption that SAPL is *not* its alter ego.  *Mid-Century Ins. Co.*, 9 Cal. App. 4th at 1212.

To raise a triable issue of alter ego liability, Plaintiff must offer evidence of both of the following "general requirements": "(1) that there [is] such unity of interest and ownership that the separate personalities of the corporation and the [subsidiary] no longer exist and (2) that, if the acts are treated as those of the corporation alone, an inequitable result will follow." *Mesler*, 39 Cal. 3d at 300. Plaintiff cannot raise a triable issue as to either element.

### 1.    Plaintiff Lacks Competent Evidence to Show a "Unity of Interest and Ownership" Between Parsons and SAPL.

First, Plaintiff has no evidence of a "unity of interest and ownership" between Parsons and SAPL.  Courts consider numerous factors in determining whether a unity of interest and ownership exists.  The California Court of Appeals, in *Associated Vendors, Inc. v. Oakland Meat Co.*, listed many of these factors, including: "[c]ommingling of funds and other assets," "the failure to maintain minutes or adequate corporate records," "sole ownership of all of the stock in a [subsidiary] by [the parent] or the [parent and affiliated entities]," "the use of the same office or business location," "the use of a [subsidiary] as a mere shell, instrumentality or conduit for a single venture or the business of" the parent corporation, "the disregard of legal formalities and the failure to maintain arm's length relationships among related entities," and "the diversion of assets from [the subsidiary] by or to [the parent corporation], to the detriment of creditors, or the manipulation of assets and liabilities between entities so as to concentrate the assets

22

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -

in one and the liabilities in another." 210 Cal. App. 2d 825, 838-840 (1962). "[N]o single factor is determinative and 'courts have cautioned against relying too heavily in isolation on … concentration of ownership and control.'" *Am. Diversified Props.*, 2016 Cal. App. Unpub. LEXIS 6137, at *18 ((citing *Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000); quoting *Mid-Century*, 9 Cal. App. 4th at 1213)). However, California law requires that at least "several" of these factors be present. *Associated Vendors*, 210 Cal. App. 2d at 840.

Plaintiff has no evidence that *any* of these factors exists. Rather, the uncontroverted evidence weighs heavily *against* a finding of alter ego liability. First, and most critically, *Parsons has no direct ownership stake in SAPL*. UF 18. Indeed, Parsons' only relation to SAPL is indirect, through a subsidiary: PMEC, which holds only a 50% ownership stake in SAPL. UF 19 & 20. The other 50% owner of SAPL is wholly unrelated to Parsons. UF 113. Parsons and SAPL also maintain separate office locations; Parsons' corporate headquarters are located in Pasadena, California, while SAPL's offices and operations are concentrated in Saudi Arabia. UF 17 & 116.[3] SAPL also is not Parsons' "single business venture." Rather, Parsons is a stakeholder in approximately 46 subsidiaries across the United States and elsewhere that are engaged in business ventures completely independent of SAPL's operations. UF 119. Finally, Parsons has never transferred funds or assets to SAPL for the purpose of depriving creditors of the ability to recuperate monies owed. UF 120.

Consistent with the evidence Parsons has offered, Plaintiff testified he had no reason to believe that Parsons and SAPL do not keep separate financial and corporate records, or fail to observe corporate legal formalities (UF 114 & 121), but contends

---

[3] Plaintiff testified that he was aware of people who worked in Yanbu, Saudi Arabia who occasionally worked out of the SAPL office in Riyadh, but that hardly establishes that *Parsons* used SAPL's offices as its own. UF 114. Indeed, Plaintiff did not know what entity those people worked for. UF 115.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

that SAPL and Parsons must commingle assets based on the following facts: (1) he had an ID badge that contained the word "Parsons," (2) he both received documents and filled out documents during his employment with SAPL that said "Parsons" on them, (3) he and others introduced themselves as being "from Parsons," and (4) he had a Parsons e-mail address. UF 122-26. None of these facts raise a triable issue because they have nothing at all to do with Parsons' or SAPL's assets. Plaintiff therefore cannot overcome the competent evidence that Parsons has submitted in support of this Motion showing that Parsons and SAPL maintain separate bank accounts, SAPL maintains its own financial records, and Parsons and SAPL do not commingle assets and liabilities. UF 114 & 115. No triable issue of alter ego liability arises.

### 2. There Is No Evidence That an "Inequitable Result Will Follow" if Plaintiff's Can Recover Only from SAPL.

Plaintiff also cannot raise a triable issue of alter ego liability because there is no evidence he will suffer some "inequitable result" if he is only permitted to recover from SAPL. Courts disregard corporate separateness when the subsidiary entity was "used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose." *Sonora Diamond Corp.*, 83 Cal. App. 4th at 538. But:

> it is not sufficient to merely show that a creditor will remain unsatisfied if the corporate veil is not pierced, and thus set up such an unhappy circumstance as proof of an "inequitable result." In almost every instance where a plaintiff has attempted to invoke the doctrine he is an unsatisfied creditor. The purpose of the doctrine is not to protect every unsatisfied creditor, but rather to afford him protection, where some conduct *amounting to bad faith* makes it inequitable … for the equitable owner of a

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

corporation to hide behind its corporate veil.

*Associated Vendors*, 210 Cal. App. 2d at 842 (emphasis added).

Here, there is no evidence that Plaintiff, as a putative creditor, will be "unsatisfied" if he can recover only from SAPL, nor any evidence that any inability to recover results from conduct "amounting to bad faith." Plaintiff testified that he knows of no reason that SAPL could not satisfy a judgment obtained against it—let alone because of fraud or some other bad faith conduct–except his belief that a judgment issued by a U.S. court would not be enforced in Saudi Arabia. UF 127-29. That is beside the point. No one has forced Plaintiff to sue in the United States. He could have brought this action against SAPL in Saudi Arabia. *See Spradlin v. Lear Siegler Mgmt. Servs. Co.*, 926 F.2d 865, 866, 869 (9th Cir. 1991) (compelling plaintiff to bring breach of contract, slander, emotional distress, and other claims against his former employer in Saudi Arabia pursuant to a forum selection clause); *Forsythe v. Saudi Arabian Airlines Corp.*, 885 F.2d 285, 290 (5th Cir. 1989) (enforcing forum selection clause in favor of Saudi Arabia in employment dispute because "[t]here [wa]s no indication that a Saudi Arabian forum would treat [the plaintiff] unfairly or deprive him of all remedies").

As noted, SAPL also has never transferred funds or assets to Parsons because it was attempting to avoid meeting its debts (to Plaintiff or anyone else). UF 120. There simply is no evidence to support an alter ego theory. On these facts, Plaintiff cannot sue Parsons for acts of SAPL employees. Summary judgment must be granted for this reason alone.

## IV.    **CONCLUSION**

For all the foregoing reasons, Parsons respectfully requests that this Court grant its Renewed Motion for Summary Judgment.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

1
2

DATED:  July 10, 2017.          OGLETREE, DEAKINS, NASH, SMOAK &
                                STEWART, P.C.

3
4
5
6
7

By:  s/ Elizabeth A. Falcone
     Elizabeth A. Falcone, CA Bar No. 219084
     elizabeth.falcone@ogletreedeakins.com

     Attorneys for Defendant
     PARSONS CORPORATION

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

26          Case No. 2:16-cv-02518-JFW (FFMx)
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION
FOR SUMMARY JUDGMENT

**PROOF OF SERVICE**
*Luay AlJamal v. Parsons Corporation*
Case No. 2:16-cv-02518-JFW (FFMx)

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made. At all times herein mentioned I have been employed in the City of Portland in the office of a member of the bar of this court at whose direction the service was made. My business address is 222 SW Columbia Street, Suite 1500, Portland, OR 97201.

On July 10, 2017, I served the following document(s):

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT**

on the persons below as follows:

James J. Orland, CA Bar No. 161937
jim@orlandlawgroup.com
Orland Law Group, A Professional Corporation
1334 Parkview Avenue, Suite 100
Manhattan Beach, CA 90266
Telephone: 310.546.8139
Facsimile: 310.546.8193

Attorneys for Plaintiff
LUAY ALJAMAL

☒ **BY CM/ECF:** With the Clerk of the United States District Court of California, using the CM/ECF System. The Court's CM/ECF System will send an e-mail notification of the foregoing filing to the following parties and counsel of record who are registered with the Court's CM/ECF System:

☒ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

☐ **(Federal)** I declare that I am a **member** of the State Bar of this Court at whose direction the service was made. I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on July 10, 2017, at Portland, Oregon.

| Rosealynn Seitz | /s/ Rose Seitz |
|---|---|
| Type or Print Name | Signature |

025487.000018
30121198.2

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT

2017 06 10
Parsons-Aliamal -